**THIRD DIVISION**
**MCFADDEN, C. J.,**
**DOYLE, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. Please refer to the Supreme Court of Georgia Judicial Emergency Order of March 14, 2020 for further information at (https://www.gaappeals.us/rules).**

**May 27, 2020**

# In the Court of Appeals of Georgia

A20A0501. HENRY v. STATE.                                    HO-019C

HODGES, Judge.

Kemar Henry was convicted by a jury of driving under the influence of alcohol per se (OCGA § 40-6-391 (a) (5)) and for failure to dim his headlights (OCGA § 40-8-31).[1] Henry moved for a new trial, which the trial court denied. He now appeals, contending that OCGA § 40-6-392 (e) is unconstitutional because it violates his right to confront witnesses called against him. He also contends that his trial counsel was ineffective for (1) failing to object to the admission of the State-administered blood test result which was obtained in violation of his right to be free from unreasonable search and seizure; (2) failing to object to the admission of the State-administered

---

[1] Henry was acquitted of driving under the influence of alcohol to the extent he was less safe (OCGA § 40-6-391 (a) (1)) and for failure to maintain his lane (OCGA § 40-6-48).

blood test result because he was denied his right to independent testing after having requested it; (3) failing to have his blood independently tested after obtaining a court order to permit it; and (4) failing to obtain the underlying documents to the GBI's summary blood test report. For the reasons that follow, we reverse the denial of Henry's motion for new trial and remand the case for further proceedings consistent with this opinion.

"On appeal from a criminal conviction, a defendant no longer enjoys the presumption of innocence, and the evidence is viewed in the light most favorable to the guilty verdict." (Citation and punctuation omitted.) *Walker v. State*, 349 Ga. App. 188 (825 SE2d 578) (2019).

So viewed, the evidence shows that on the night of June 17, 2017, Henry was pulled over by a Georgia State Patrol trooper. The trooper observed Henry's vehicle with its bright lights on driving in the opposite direction from the trooper. When the trooper made contact with Henry, his eyes were bloodshot and watery, and his speech was slurred, though the trooper did not detect any smell of alcohol. Henry agreed to the trooper's request to perform field sobriety testing. Henry demonstrated four clues of impairment on the horizontal gaze nystagmus test, three clues of impairment on the walk and turn test, and two clues of impairment on the one-leg stand test. After

several unsuccessful attempts to obtain a reading on the alco-sensor, Henry finally provided an adequate sample which registered positive for alcohol.

At that time, Henry was placed under arrest for driving under the influence of alcohol. The officer read Henry the age-appropriate implied consent notice, after which Henry asked the officer "[s]o you're gonna let me do the breathalyzer one more time?" The trooper responded that "[w]e're past that bridge. We're past it." The trooper read Henry the implied consent notice again, after which Henry said "so you are saying I can take, my blood, my blood, my doctor can do my blood test and all that?" The trooper responded to Henry's question by stating, "I need a yes or a no right now. I did not ask anything about your doctor. I said the State. Yes or no." Henry's response on the dash camera video is inaudible. The trooper then asked Henry "[i]s that a yes?", and Henry's response is again inaudible on the dash camera video. Although it is not discernable on the video, the trooper testified that Henry consented to a blood test in a soft voice.

Henry's blood was drawn at the jail, and testing performed by the GBI concluded that Henry's blood alcohol concentration was .085 grams per 100 milliliters of blood, with a variance, or margin of error, of plus or minus .004. Henry was charged by accusation of driving under the influence of alcohol per se, driving

under the influence of alcohol to the extent he was less safe, failure to maintain lane, and failure to dim headlights. Prior to trial, Henry's counsel secured an order to obtain additional independent testing of Henry's blood, but no additional testing was performed. Henry was convicted of driving under the influence per se and failure to dim lights, and he was acquitted of driving under the influence to the extent he was less safe and failure to maintain lane. Henry timely filed a motion for new trial, which the trial court denied following an evidentiary hearing. Henry now appeals his DUI conviction.

1. Henry contends that OCGA § 40-6-392 is unconstitutional because it violates his right to confront his accusers. The Supreme Court found this enumeration waived.

Henry initially filed this appeal in the Supreme Court of Georgia. See Ga. Const. of 1983, Art. VI, Sec. VI, Par. II (1). However, our Supreme Court transferred Henry's appeal to this Court, finding:

> regardless of whether [Henry's] Confrontation Clause claim might otherwise invoke [the Supreme Court's] constitutional question jurisdiction, his failure to raise this issue until the filing of his amended motion for new trial prevents its assertion as a basis for [the Supreme Court's] jurisdiction. See *Hardeman v. State*, 272 Ga. 361 (529 SE2d 368) (2000) (transferring appeal where constitutional question was

4

raised for the first time in motion for new trial); *Kolokouris v. State*, 271 Ga. 597 (1) (523 SE2d 311) (1999) (constitutional challenge cannot be raised for first time after a guilty verdict has been returned).

"As a result, this enumeration is without merit because the Supreme Court's determination in its transfer order is final and binding. Accordingly, this enumeration provides nothing for us to review." (Citation and punctuation omitted.) *Vaughn v. State*, 352 Ga. App. 32, 37 (2) (833 SE2d 723) (2019).

2. Henry also contends that his trial counsel was ineffective for failing to object to the introduction of the blood test result because he was denied the independent testing he requested.[2] We agree.

When this Court reviews a ruling on a claim of ineffective assistance of counsel

> we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts. To prevail on a claim of ineffective assistance of trial counsel, a defendant bears the burden of showing both that trial counsel was deficient and that he was prejudiced by the deficiency. To demonstrate deficient representation, a convicted criminal defendant

---

[2] "For convenience of discussion, we have taken the enumerated errors out of the order in which appellant has listed them . . ." *Foster v. Morrison*, 177 Ga. App. 250 (1) (339 SE2d 307) (1985).

5

must show that counsel's representation fell below an objective standard of reasonableness.

(Citations and punctuation omitted.) *Thrasher v. State*, 300 Ga. App. 154 (684 SE2d 318) (2009).

To determine whether it was ineffective for trial counsel to fail to file a motion to suppress the blood test result or otherwise object to its admission, Henry is required to make a strong showing that such a motion would have been granted. Id. at 155 (1). "Reversal is required when a showing is made that a motion to suppress would have been meritorious and when there is a reasonable likelihood that the outcome of the trial would have been different if evidence had been suppressed." Id. Accordingly, we must analyze the merits a motion to suppress would have had in this case.

Georgia law provides that a person who consents to chemical testing of his blood, urine, breath, or other bodily substance

> may have a physician or a qualified technician, chemist, registered nurse, or other qualified person of his own choosing administer a chemical test or tests in addition to any administered at the direction of a law enforcement officer. The justifiable failure or inability to obtain an additional test shall not preclude the admission of evidence relating to the test or tests taken at the direction of a law enforcement officer[.]

6

OCGA § 40-6-392 (a) (3). "[A]n accused's right to have an independent test performed does not attach until the State performs its test, but the right to request an independent test may be exercised when the accused is read [his] informed consent rights." (Citation and emphasis omitted.) *Ladow v. State*, 256 Ga. App. 726, 729 (569 SE2d 572) (2002). "An accused's right to have an additional, independent chemical test or tests administered is invoked by *some statement that reasonably could be construed, in light of the circumstances, to be an expression of a desire for such test.*" (Emphasis supplied.) Id. at 728.

> Implied consent warnings ask an accused to submit to a State-administered test; they do not ask the accused whether he wants an additional, independent chemical test. And none specifies to the accused any requirements for requesting that test – linguistically, temporally, or otherwise[.]

(Citation and punctuation omitted.) *McGinn v. State*, 268 Ga. App. 450, 452 (602 SE2d 209) (2004). Indeed,

> [b]y its terms, "reasonably could" means we must treat a defendant's statements as a request if reasonable people could disagree about whether those statements expressed a desire for an independent test. The fact that [an ambiguous statement] reasonably could support two different interpretations – either as a request for an independent test or not – requires us to resolve the ambiguity in [the defendant's] favor,

7

because his statements "reasonably could" be construed as a request for an independent test.

*Wright v. State*, 338 Ga. App. 216, 224 (1) (c) (789 SE2d 424) (2016). "If an individual requests an independent test but is unable to obtain it, the results of the State-administered test cannot be used by the State as evidence against him unless the failure to obtain the test is justified." (Citation and punctuation omitted.) *Johnson v. State*, 261 Ga. App. 633, 636 (2) (583 SE2d 489) (2003).[3]

Here, after Henry was read the implied consent notice and asked to consent to a blood test for the second time, he asked the trooper, "so you are saying I can take, my blood, my blood, my doctor can do my blood test and all that?" The trooper responded to Henry's question by stating, "I need a yes or a no right now. I did not ask anything about your doctor. I said the State. Yes or no." Henry's statement is arguably ambiguous as to whether Henry sought to have his doctor perform an independent blood test or whether he sought to forward the blood collected by the State for subsequent testing by his doctor.[4] Instead of answering Henry's question or

---

[3] The State does not argue that the failure to accommodate Henry's request was justified; rather, it argues that Henry did not make a request for independent testing.

[4] Importantly, Henry was not attempting to designate a different form of chemical testing with his question than was requested by the trooper. See, e. g.,

attempting to clarify what Henry meant, the trooper ignored Henry's request and made no attempt to accommodate it. Under our current law, the trial court would have had to resolve any ambiguity in Henry's statement in his favor. Accordingly, Henry has made a strong showing that, had his counsel filed a motion to suppress the blood test result, it would have been granted, and thus trial counsel was deficient for failing to so move.[5] See *Thrasher*, 300 Ga. App. at 157 (1) (trial counsel was deficient for failing to move to suppress blood test results obtained after an inexcusable delay between arrest and reading implied consent notice); *Collier v. State*, 266 Ga. App. 762, 764 (598 SE2d 373) (2004) (trial counsel was deficient for failing to move to

_____

*Mathis v. State*, 298 Ga. App. 817, 818-819 (1) (681 SE2d 179) (2009) ("a defendant's attempt to designate the [S]tate-administered test is not a request for an independent test.") (citation omitted).

[5] Relying on now Justice Peterson's special concurrence in *Wright*, the State invites us to revisit the "reasonably could" standard established by *Ladow* and replace it with the "reasonably would" standard which is applied in other contexts. However, we are not looking at this issue in the context of a trial court's denial of a motion to suppress; rather, Henry's claim is premised on an assertion of ineffective assistance of counsel. Regardless of whether the standard espoused in *Ladow* should be revisited, it was the standard which was in place at the time of Henry's trial, and thus it is the standard which governs our analysis about the reasonableness of trial counsel's performance. Indeed, as now Justice Peterson acknowledges in his special concurrence, "[w]hether statements 'reasonably could be' construed as expressing a desire for an additional test is not, then, an exacting test." *Wright*, 338 Ga. App. at 227 (Peterson, J., concurring). It was incumbent upon trial counsel to take advantage of this low bar to the benefit of his client.

9

suppress chemical test results obtained as a result of consent tainted by the officer misleading the defendant about the effect of his failure to consent to testing); *Jefferson v. State*, 217 Ga. App. 747, 753 (1) (b) (459 SE2d 173) (1995) (trial counsel was deficient for failing to move to exclude evidence which was obtained as the result of an unconstitutional detention).

We then turn to whether Henry was prejudiced by this deficiency, and we conclude that Henry in fact suffered prejudice. Henry was convicted of driving under the influence of alcohol per se, which required the State to prove that he had a blood alcohol concentration of at least .08 grams per 100 milliliters of blood. OCGA § 40-6-391 (a) (5). Without the results of the blood test, the State would have been unable to establish the elements of the claim to convict him. See *Wright*, 338 Ga. App. 224 (1) (c) (reversing trial court's denial of a motion to suppress results of the State-administered breath test and finding that the conviction for driving under the influence per se must also be reversed in light of the fact that the evidence was insufficient to convict the defendant in the absence of the breath test results). "Finding deficient performance of trial counsel and prejudice, . . . we must reverse" the trial court's denial of Henry's motion for new trial and remand this case for further proceedings consistent with this opinion. *Thrasher*, 300 Ga. App. at 157 (1).

3. In light of our holding in Division 2, we need not address Henry's remaining enumerations of error.

*Judgment reversed and case remanded. McFadden, C. J., and Doyle, P. J., concur*.